Leonard P. Tomlinson and Recie B. Tomlinson v. Commissioner.
Tomlinson v. Commissioner
Docket No. 94662.
United States Tax Court
T.C. Memo 1963-140; 1963 Tax Ct. Memo LEXIS 202; 22 T.C.M. (CCH) 662; T.C.M. (RIA) 63140; May 23, 1963
*202 Held: Petitioners have failed to establish error in respondent's disallowance of claimed itemized deductions. Leonard P. Tomlinson, pro se., R.F.D. #1, Smyrna, Del. Richard A. Francis, for the respondent. HOYT
Memorandum Opinion HOYT, Judge: The respondent determined a deficiency in the petitioners' income tax for the taxable year ended December 31, 1959, in the amount of $272.38, all of which is in controversy. The issue presented is whether respondent erred in disallowing, for lack of substantiation, all of petitioners' itemized deductions reported on their joint return in the total sum of $2,184.37. Respondent allowed in lieu thereof a standard deduction in the amount of $946.02. Some of the facts have been stipulated and are so found. The petitioners are husband and wife residing at R.F.D. #1, Smyrna, Delaware. They maintained a residence at Delaware City, Delaware, during the year 1959, and filed a joint Federal income tax return for that year with the district director of internal revenue, Greensboro, North Carolina. Petitioner Recie B. Tomlinson is a party to this proceeding solely *204 by virtue of the filing of a joint return. Petitioner Leonard P. Tomlinson will be hereinafter referred to as the petitioner. Petitioner was unemployed for the first three months of 1959. On April 1st of that year he entered into an "Off Continent Employment Agreement" with "Greenland Contractors." The point of hire was Trenton, New Jersey, and petitioner was employed under the classification of "Plumber and Pipefitter," for an indefinite period. That agreement provided, in part, as follows: SECTION 2. TERM OF AGREEMENT. The term of this agreement shall be the period during which the services of the Employee are required by the Contractor. No definite period of employment is assured or guaranteed. It is understood by the parties that any reference herein to a definite period of time of service refers solely to the conditions under which the Employee may be entitled to the benefit of travel pay, travel expenses, and transportation from the jobsite to Employee's point of hire, as hereinafter provided. SECTION 6. TRANSPORTATION AND TRAVEL EXPENSE. (a) The Contractor shall furnish transportation to the Employee from the point of hire stated herein to the jobsite and except as *205 is otherwise provided in Sections 9 and 10 hereof, return transportation from the jobsite to such point of hire upon Employee's completion of service or upon medical release of the Employee. SECTION 9. RETURN TRANSPORTATION FUND. The Contractor shall withhold as a Return Transportation Fund not in excess of twenty percent of each wage payment earned by the Employee under this agreement from the time of his departure to the jobsite until a total of $360.00 shall have been withheld. If the Employee quits or is discharged for cause prior to the completion of the period of service provided for in Section 10(c) of this agreement, the Contractor shall apply the Return Transportation Fund to the payment on behalf of the Employee of his cost of living, transportation, and other expenses incidental to his return to the United States and the cost of recruiting, processing, and transporting a replacement for the Employee, whether in the same classification as the Employee or not, or the utilization of a higher paid classification of employee at the jobsite to perform the work the Employee would have performed had he not quit or been discharged. It is agreed that such costs and expenses will *206 exceed the sum of $360.00 and that the Contractor may therefore retain the entire Return Transportation Fund to apply on such costs and expenses as liquidated damages and not as a penalty. If the Employee quits or is discharged for cause prior to the completion of the period of service provided for in Section 10(c) of this agreement all monies due to the Employee at the time of such quitting or discharge shall be added to and become a part of said Return Transportation Fund to the extent necessary to bring such fund to the sum of $360.00. If all monies so withheld by the Contractor under the provisions hereof fail to bring said Return Transportation Fund up to the sum of $360.00, the Employee shall remain obligated to the Contractor for any deficiency. If this agreement is terminated by the Contractor prior to the period of service provided for in Section 10(c) hereof and for reasons other than those provided for in Section 10(a) hereof, the Return Transportation Fund shall be paid to the Employee upon such termination. SECTION 10. TERMINATION OF AGREEMENT. (a) The Contractor may by notice in writing, terminate the Employee's employment and his right to further wages and benefits *207 hereunder for any of the following causes: * * *
(c) The Employee agrees that if he quits prior to the completion of eight (8) months of service hereunder, the Contractor's obligation to the Employee shall cease on the date of such quitting and the Employee shall then be liable and responsible for the costs and other expenses for his return to his point of hire in the United States. The Employee also agrees that if he is terminated for cause as provided in subparagraph (a) hereof, the Contractor's obligation to the Employee shall cease on the date of such termination for cause and the Employee shall then be liable and responsible for the costs and other expenses for his return to his point of hire in the United States. * * * SECTION 16. TOOLS AND PERSONAL EQUIPMENT. (a) The Contractor will furnish all tools required at the jobsite for the performance of the Employee's work. (b) The Employee shall provide at his own expense all clothing and personal equipment normally required to enable him to perform work at the jobsite. Such clothing and personal equipment shall meet minimum requirements set by the Contractor. The Employee shall not take with him clothing and other personal *208 property weighing more than 65 lbs. and of a valuation in excess of $150.00. * * * On the day of his flight to Thule, Greenland, petitioner filed with his employer a form entitled "Employees Baggage Inventory" listing luggage, sunglasses, various items of under and outer clothing, work shoes, overshoes, work gloves, and certain specified cold and wet weather garments, having a total "value" of $189.40. Included in such listing were certain "mandatory" items shown as having a value of $85, which were required to be in possession of the employee prior to shipment to jobsite, but even these can only be described as clothing and personal equipment of a general sort normally worn or used by a member of petitioner's trade. Pursuant to the above-mentioned agreement, petitioner was employed by Greenland Contractors from April 1 to November 21, 1959, and during that period he worked in Thule, Greenland. The amount of $360 was withheld from his wages for the agreed "Return Transportation Fund." The employer's notice of termination of employment shows that petitioner's employment was "Terminated for Cause" at 9:30 a.m. on November 21, 1959, which was prior to completion of 8 months of service *209 specified in the agreement and, further, the notice of termination stated that the "Return Transportation Fund" was not payable to the employee, petitioner. Upon petitioner's return to the United States from Greenland in November 1959, he was again unemployed until he went to work for The M. W. Kellogg Co. of Claymont, Delaware, on or about December 15, 1959. In his 1959 return petitioner reported wages in the total amount of $9,460.16 consisting of $9,112.96 paid by Greenland Contractors and $347.20 paid by The M. W. Kellogg Co. The return claimed itemized deductions as follows: Contributions
$ 960.00
Interest
23.93
Taxes
217.94
Medical and dental expense
135.00
Other deductions
847.50
Total deductions
$2,184.37 The item of "Taxes" indicated the inclusion therein of state, sales, real estate, and gasoline taxes. The item of "Other Deductions" indicated the inclusion therein of travel fare, car repair, special clothing, small tools, auto and truck licenses, safety equipment, and union dues. A schedule attached to the return, in support of the claimed deductions, showed items and amounts as follows: Items
Amounts
State Tax
$ 4.94
Real Estate Tax
36.00
Sale Tax N.C., S.C., Pa., Tenn.
45.00
Auto & Truck Licenses
29.75
Safety Equipment
24.50
Charitable & Church Contributions
960.00
Professional & Union Dues
163.25
State Gas Tax
132.00
Small Tools
16.00
Special Clothing as Required By
Greenland Contractors
183.00
Travel Fare to and from Thule, Green.
360.00
Operation, Medicine, transp. to and
from Greenville General Hospital,
Greenville, S.C. For Mrs. L. P.
Tomlinson, Not covered by insurance
135.00
Damage to car not covered by Ins.
71.00
Nine payments to Equitable Sec. Trust
Co. of $44.33 rate 6% interest
23.93
*210 Giving the petitioner the benefit of every doubt and accepting each scintilla of evidence and all reasonable inferences as establishing some of the deductions claimed, we find that petitioner has proved a maximum total of only $454.12 in allowable itemized deductions for the year 1959. This is considerably less than the amount of $946.02, the standard deduction allowed by respondent. The respondent disallowed petitioner's claimed itemized deductions because of a lack of substantiation and respondent's determination is prima facie correct. The petitioner has the burden of proof with respect to the exact amounts involved and the specific character of each of the claimed deductions. At the trial petitioner was unable to substantiate a major portion of the claimed deductions. His testimony was fairly positive and of probative weight as to some items, but not as to others, and several items were neither testified to nor supported by any form of documentary evidence. We will discuss in detail only some of the items as to which there is a clear failure of proof. Petitioner claimed "Contributions" in the lump sum of $960 for charity and church. He testified to various cash contributions *211 totaling $225 and to a donation to the Oxford Orphanage evidenced by a check for $25. No testimony or evidence was given with respect to the remaining $710 which is therefore clearly not allowable as a deductible contribution under section 170 of the Internal Revenue Code of 1954. Petitioner claimed "Taxes" in the total amount of $217.94 embracing several items: $4.94 state tax; $36 real estate tax; $45 sales tax North Carolina, South Carolina, Pennsylvania, and Tennessee; and $132 state gasoline tax. He had no checks or receipts with respect to any part thereof and his indefinite testimony touched on only some of the items. As to the claimed sales tax of $45, petitioner testified merely that "any time you enter the State of North Carolina, Tennessee, and South Carolina, any item above ten cents has a one cent sales tax on it." We do not know anything about how much time petitioner spent in those states in 1959 or how much money may have been spent there during the taxable year. He was at Thule, Greenland, during most of 1959 and the family home was in Delaware that year. As to the claimed state gasoline tax of $132, there is no testimony at all nor any evidence *212 regarding the number of miles driven or gallons of gasoline purchased. Petitioner has clearly failed to establish allowable deductions for taxes in the sum of $177 under section 164 of the Internal Revenue Code of 1954. Petitioner claimed a "Medical and dental expense" deduction of $135, but the schedule in his return does not disclose how this amount was computed. The record shows, however, that petitioner's wife, Recie, underwent an operation in the Greenville General Hospital, Greenville, South Carolina, and incurred expenses not compensated for by insurance. Petitioner testified about this and produced three checks, dated in June and July 1959, issued by his wife for payments to the said hospital and certain doctors in the total amount of $171.10. He further testified that no other medical expense was paid, but that in connection with her illness, transportation expense was incurred for travel by automobile back and forth between Delaware City, Delaware, and Greenville, South Carolina. Petitioner did not establish the number or the cost of such trips or that they were required for medical reasons. Petitioner has, therefore, failed to prove that he incurred *213 medical expenses in excess of 3 percent of his adjusted gross income. Accordingly, no allowable medical expense deduction under section 213 of the Internal Revenue Code of 1954 has been proved, and none can be allowed. Under the heading of "Other Deductions," petitioner has claimed various items totaling $847.50. (a) With respect to the item of $24.50 claimed for safety equipment, there is no testimony or other evidence and, accordingly, it must be disallowed. (b)With respect to the item of $163.25 claimed for professional and union dues, petitioner testified that he is not now claiming any amount for professional dues, but only the sum of $8.50 union dues. [1] Accordingly, this amount is all that has been proved and the balance of $154.75 must be disallowed. (c) With respect *214 to the item of $71 claimed for damage to car not covered by insurance, petitioner's only testimony was "Damage to car in October, not insured, $72. I have a statement on that." and he submitted in evidence a check dated September 12, 1959, issued by Mrs. L. P. Tomlinson in Greenville, South Carolina, payable to the order of Fazio Auto Body Works in the sum of $56. This expenditure may have been purely a personal expense and we may not assume otherwise, particularly in the light of the fact that this check was in September, the month before the alleged damage was suffered. Accordingly, the entire amount of $71 must be disallowed and petitioner is not entitled to deduct it as a casualty loss or otherwise under section 165 of the Internal Revenue Code of 1954. (d) With respect to the item of $183 claimed for special clothing required by Greenland Contractors, petitioner submitted in evidence an "Employee Baggage Inventory" required by his employer at the time of his flight to Thule, Greenland, listing various items and the value thereof. Petitioner testified the clothing was required and the ascribed values represented what he paid for its purchase. However, as *215 noted in the findings, that inventory denoted only certain items having a value of $85 as "mandatory" for petitioner's work in Greenland. Part of the inventory listing embraced such ordinary articles of clothing as socks, underwear, tee-shirts, wool pants, wool shirts, sweaters, etc., which would appear to fall into the category of purely personal expense. Even assuming that petitioner paid $85 for special work clothing required for his Greenland job, the record fails to establish that the balance of the claimed item in the amount of $98 constitutes an allowable deduction as a trade or business expense under section 162 of the Internal Revenue Code of 1954 or otherwise. (e) As to the item of $360 claimed as travel fare to and from Thule, Greenland, petitioner testified that such amount was withheld from his wages for travel to and from Greenland in pursuit of his trade and that he was not reimbursed. We have set out in our findings portions of petitioner's "Off Continent Employment Agreement" and his notice of termination of employment. It is clear that petitioner's travel expense to Greenland was paid by his employer. It is also clear that the $360 withheld *216 from petitioner's wages under section 9 of his employment contract, which was terminated for cause, was retained by his employer for payment of petitioner's return transportation and his liability for liquidation damages. Petitioner has failed to establish what portion of $360 represented actual travel expense from Greenland to the United States and we have no foundation on which to base even a reasonable approximation. Accordingly, no amount may be allowed as a deduction for traveling expenses under section 162(a)(2) of the Internal Revenue Code of 1954. The claimed itemized deductions which petitioner has clearly failed to prove amount to the sum of approximately $1,370, and if the entire amount of travel expense, $360, is disallowed, which we feel it must be, petitioner has proved deductible items of less than $500. The petitioner's proved deductions therefore amount to considerably less than the standard deduction allowed by respondent. Respondent's determination must be sustained. Decision will be entered for the respondent. Footnotes
1. Petitioner's testimony about union dues was confusing and inexact. It might be inferred that he paid $8.50 each month during 1959 at Wilmington even though he was in Greenland during most of that year. However, even if this were done, the result would be unchanged and the standard deduction allowed would still exceed the total of itemized deductions supported by any evidence.↩